**Kevin JOHNSON, Petitioner,
Respondent**

v.

**STATE of Minnesota, Appellant.**

**No. C8–02–790.**

Court of Appeals of Minnesota.

Dec. 3, 2002.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for appellant.

John M. Stuart, State Public Defender, Davi E. Axelson, Assistant Public Defender, Minneapolis, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge, LANSING, Judge, and HARTEN, Judge.

## O P I N I O N

RANDALL, Judge.

Respondent Kevin Johnson entered a guilty plea to first-degree criminal sexual conduct and was sentenced for a period of 146 months. A postconviction court granted respondent's petition for postconviction relief finding there was ineffective assistance of counsel because respondent's attorney failed to challenge the admission of DNA evidence taken pursuant to a court order in a previous conviction that had been reversed on appeal. Appellant alleges that the postconviction court erred in ruling that respondent's attorney was ineffective. The state further argues (1) respondent's attorney did in fact move to suppress the DNA evidence; (2) the Knaffla rule bars respondent from challenging the admission of the evidence; and (3) because the sample was obtained pursuant to a court order and not through any misconduct by police, the court erred in applying the exclusionary rule. We affirm.

## FACTS

On November 6, 1997, respondent Kevin Johnson was charged with first-degree criminal sexual conduct and third-degree criminal sexual conduct under Minn.Stat. §§ 609.342, subd. 1(d) and 609.344, subd. 1(c) (1996). According to the complaint, on October 26, 1997, respondent held a large metal pipe to the head of T.H.S. and forced her to have sex with him, threatening to hurt or kill her if she resisted. Respondent denied the allegations, claiming T.H.S. falsely accused him of rape because he did not pay her money he had promised her. After a plea agreement had been reached, on February 3, 1998, respondent entered a guilty plea to the charge of promotion of prostitution by fraud in violation of Minn.Stat. § 609.322, subd. 2(1) (1996). In exchange, the state dismissed the criminal sexual conduct charges. The terms of the negotiation were that respondent would receive probation and a stayed sentence. Other terms and conditions were left up to the court.

As a basis for the guilty plea, respondent admitted that he and T.H.S. had agreed to carry out a prostitution scam on the weekend of October 26, 1997. Under the plan, respondent presented T.H.S. as a prostitute under his control, and they convinced people she would have sex with them for money. Respondent took money from the customers, but T.H.S. did not have sex with them. The plan was to divide the proceeds, but respondent never paid T.H.S. her share of the proceeds. Respondent was sentenced on March 3, 1998. The district court rejected respondent's argument that his conviction did not "arise from the same set of circumstances" as the original criminal sexual conduct charges and ordered him to register as a sex offender under Minn.Stat. § 243.166, subd. 1(a)(1)(iii) (1996).

As part of the plea agreement, respondent received a stayed sentence of 60 months, with five years' probation. As terms and conditions of probation, the court ordered respondent to follow all probation department rules, remain law abiding, serve 180 days in the workhouse, have no contact with T.H.S., successfully complete a sex-offender treatment program, and submit a DNA sample. Respondent initially complied with the terms of his probation, but in November 1998, he was dropped from the sex-offender treatment program for having missed four consecutive classes, twice failed to contact his probation officer, and missed one probation appointment.

Because of these violations, the state moved to revoke his probation. Respondent denied the allegations and filed a motion to withdraw his guilty plea. He claimed his plea was invalid for ineffective assistance of counsel and because he was unaware of the sex-offender registration requirement. Respondent, at that point, did not mention the DNA sample that he

had been required to submit. At the hearing for Respondent's motion to withdraw his guilty plea, he testified that he would not have pleaded guilty had he known it would require him to register as a sex offender. On April 20, 1999, the court denied his motion to withdraw his guilty plea finding that (a) appellant knew at sentencing of his duty to register but chose not to seek withdrawal of his guilty plea; (b) the duty to register was a collateral, rather than a direct, consequence of pleading guilty; (c) his counsel was not ineffective; (d) his plea was valid; (e) respondent violated his probation by being terminated from the sex-offender program and by failing to keep in contact with his probation officer. At this point, any issue of the DNA sample had still not come up. The district court denied respondent's motion to reconsider, concluded confinement was necessary, revoked probation, and executed the sentence.

Respondent appealed claiming the district court erred in (a) requiring him to register as a sex offender; (b) denying his motion to withdraw the guilty plea; and (c) revoking his probation. Respondent's then appellate attorney, SJ, "attorney number 1," argued that respondent was improperly required to register as a sex offender. The requirement to submit a DNA sample as part of that same sentencing still had not been raised at this point. This court on April 11, 2000, held that respondent's conviction did not arise from the same set of circumstances as the original charge and reversed and remanded so that respondent could, if he wished, withdraw his guilty plea. This court held that if "the "prostitution scam" statute turned out to be the basis for a new negotiated plea, registration as a sex offender cannot be required." *State v. Johnson,* 2000 WL 365051 (Minn.App. April 11, 2000) (*Johnson I*). *Johnson I* did not mention the requirement for a DNA sample. It had

not been raised (only the requirement to register as a sex offender had been raised).·

Now fast rewind. Back in April of 1999, while the appeal on the requirement to register as a sex offender was pending, the bureau of criminal apprehension (BCA) matched respondent's DNA sample with an unsolved 1992 rape. Respondent's DNA sample was the one ordered by the district court pursuant to that 1998 conviction for promotion of prostitution by fraud. On May 5, 1999, Sergeant Martinson executed a search warrant and obtained a sample of respondent's blood.

Now back to the present. At a July 12, 2000 bail hearing on this new rape charge, respondent's attorney, now JR, "attorney number 2," did bring up the subject of challenging the DNA sample because it had been taken as part of a sentencing order in a case that by now had been reversed. Attorney number 2 was later replaced by LR, "attorney number 3," a private attorney who worked on conflict cases for the Hennepin County Public Defender's Office. LR's representation is at issue.

On September 21, 1999, respondent was charged with first-degree criminal sexual conduct for the 1992 rape. At a Rasmussen hearing held on November 13, 2000, LR contested the May 5, 1999 blood sample taken pursuant to Martinson's search warrant. LR argued that a hearing should have been held prior to taking respondent's blood. LR did not argue that the initial DNA sample (matched to Martinson's search warrant sample) had been taken pursuant to the older 1998 conviction that had, by that point, been reversed and, thus, that 1998 sample should be suppressed. *See Johnson I.*

On November 15, 2000, respondent entered a guilty plea to first-degree criminal sexual conduct and on December 13, 2000,

was sentenced for a period of 146 months. On March 13, 2001, respondent filed a notice of appeal to the court of appeals. Respondent then, in July 2001, filed a motion to stay the appeal to allow him to pursue postconviction relief. That motion was granted on August 13, 2001.

In November 2001, respondent filed a petition for postconviction relief arguing that his attorney, LR, was ineffective because he failed to challenge the admissibility of the DNA evidence based on the *Johnson I* conclusion that the "prostitution scam" conviction did not arise out of the same set of circumstances as the initial charge and, therefore, the requirement to provide a DNA sample should have been set aside, just as the requirement that respondent register as a sexual offender had been set aside.

On April 29, 2002, the postconviction court granted the petition finding there was ineffective assistance of counsel for failing to challenge the DNA evidence based on *Johnson I.* This appeal by the state follows.

### ISSUE

I. Did the postconviction court err in finding that respondent's attorney was ineffective because he failed to move to suppress a DNA sample taken pursuant to a court order, as part of his sentence in another case, when that case requiring the DNA sample had been reversed?

II. Does the Knaffla rule bar respondent from challenging the earlier sentence?

### ANALYSIS

#### I. Ineffective assistance of counsel

Appellant alleges the postconviction court erred as a matter of law in finding that there was ineffective assistance of

counsel. Appellant claims the court ignored the fact that respondent's attorney, LR, made a motion to suppress the DNA evidence at a pretrial Rasmussen hearing. Appellant further argues the postconviction court failed to apply the Knaffla rule and the court improperly applied the exclusionary rule where there was no police misconduct.

Respondent argues (1) trial counsel's failure to challenge the admissibility of the DNA evidence, based on *Johnson I*, was objectively unreasonable; (2) he was prejudiced by his attorney's deficient performance; (3) the DNA sample was illegally obtained; and (4) there was no independent source to warrant inclusion of the DNA sample. Respondent argues that the Knaffla rule does not bar this appeal because the current case, first-degree criminal sexual conduct, is a separate and distinct criminal prosecution from the 1998 prostitution scam case.

## A. Deficient Representation

■ An appellate court reviews "a postconviction proceeding only to determine whether there is sufficient evidence to sustain the postconviction court's findings, and a postconviction court's decision will not be disturbed absent an abuse of discretion." *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995) (citation omitted).

The state first argues that the court erred in finding that counsel's representation fell below an objective standard of reasonableness because the court failed to account for the fact that respondent's attorney moved to suppress the DNA evidence at the Rasmussen hearing held on November 13, 2000.

We disagree. The state misses the point of what the postconviction court found. The postconviction court's order, finding ineffective assistance of counsel, did not discuss suppression based on respondent's attorney's argument that a hearing should have been held prior to taking respondent's blood on May 5, 1999. Rather, the postconviction court discussed the complete lack of any motion to suppress the DNA sample taken in 1998 pursuant to a district court sentence that had been reversed. The May 1999 sample would not have had a DNA sample to match up with if the DNA sample taken in 1998 had either never been taken or had been suppressed.

The postconviction court pointed out that at a July 12, 2000, bail hearing, a previous attorney for respondent mentioned the issue of the 1998 DNA sample [1] and that should have alerted LR, whose representation the postconviction court was reviewing, that there was a significant issue previously unraised, but now exposed (by *Johnson I*) as to whether the 1998 sample should have ever been taken.

The postconviction court supported its order with a lengthy well-reasoned memorandum of law. The court stated:

> Under the circumstances of this case, the Court is forced to conclude that Petitioner's counsel was deficient in failing to move for suppression of the DNA evidence. The sole basis for Petitioner's initial production of a DNA sample was Judge Reilly's erroneous order in case 97099945. The subsequent Court of Appeals opinion specifically held that the offense of promotion of prostitution did not arise from the same circumstances as the criminal sexual conduct charges. In so holding, the Appellate Court noted

---

1. At the July 12, 2000 bail hearing, attorney number 2 stated that respondent had not been informed that it was the DNA sample from the 1998 prostitution scam case that led to charges in the current case.

that a new negotiated plea under the "prostitution scam" statute could not serve as the basis for ordering registration as a sex offender.

The standard for ordering a DNA sample is identical to that for ordering sex offender registration (must arise from an enumerated offense or the same set of circumstances). Minn.Stat. § 609.322, is not an enumerated offense which would independently provide support for ordering a DNA sample, thus the DNA sample was ordered illegally. Petitioner also points out that the lack of authority for the first sample renders the sample obtained pursuant to [the] search warrant illegal as "fruit of the poisonous tree."

The Court also cannot ignore the fact that the legality of the DNA sample was raised during a bail hearing in July of 2000. Counsel taking over representation in a case such as this would be expected to review the record of prior proceedings. Therefore, it must be presumed that effective trial counsel would be aware of significant preceding circumstances and potential ramifications associated therewith.

Furthermore, in contrast to other cases where there might be some tactical or strategic reason for not moving to suppress; here, the Court finds none. The Court can conceive of no scenario by which a motion to suppress could have harmed Petitioner's case.

Given the state of the record, the Court can only conclude that Petitioner's trial counsel did not exercise "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Gassler*, 505 N.W.2d 62, 70 (Minn.1993). [Respondent] has met the first prong of the *Strickland/Gates* test. \* \* \*

On the record before it, the Court can only conclude that said reasonable probability exists. The DNA evidence obtained without authority pursuant to Judge Reilly's Order in case 97099945 is the dominant evidence linking Petitioner to the 1992 criminal sexual conduct case. A successful suppression motion would have resulted in the exclusion of this evidence. And, based upon the state of the record, the Court is compelled to find that there is at least a reasonable probability that said suppression motion would have been granted, had it been made. Accordingly, the Court must conclude that the second prong has been met as well.

Respondent's defense counsel "could not have been compromised or hurt by a motion to suppress." *Rodriguez v. Young*, 906 F.2d 1153, 1160 (7th Cir.1990).

The court applies a two-part test to determine if counsel's performance was ineffective. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.* The defendant has the burden of overcoming a strong presumption of counsel's reasonable conduct by showing that the errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

We conclude the record supports the postconviction court's determination that respondent's defense counsel did not exercise the customary skill and diligence that a reasonably competent attorney would perform and that as a result respondent suffered prejudice. The only basis for respondent's required production of a DNA sample was the 1998 district court order in the prostitution scam case in *Johnson I.* We reversed respondent's conviction in *Johnson I* determining that the court im-

properly required him to register as a sexual offender because his conviction did not arise out of the same set of circumstances as the originally charged crime. The postconviction court found that competent representation would have included awareness of the entire record and the appellate court's decision in *Johnson I* thus alerting the defense attorney that there was an issue with the original sentence requiring respondent to provide a DNA sample. The statutes requiring registration as a sexual offender and requiring the production of a DNA sample are virtually identical in language. *Compare* Minn. Stat. § 243.166, subd. 1(a)(1)(iii) (1996) (requiring registration as predatory offender if convicted of an enumerated offense or if the conviction arose out of the same set of circumstances) with Minn.Stat. § 609.3461, subd. 1(1) (1996) (requiring offenders convicted under section 609.342–609.345 or any offense arising out of the same set of circumstances). We conclude, as did the postconviction court, that competent defense counsel would have moved to suppress the DNA evidence following *Johnson I. See United States v. Easter*, 539 F.2d 663, 665–66 (8th Cir.1976) (finding ineffective assistance of counsel when defense counsel failed to file a suppression motion).

### B. Prejudice

■ The state argues that the postconviction court erred in concluding that respondent was prejudiced by his attorney's failure to move to suppress DNA evidence acquired by court order.[2] The district court concluded that because the DNA evidence was obtained without authority, there was a reasonable probability that a suppression motion would have been granted.

**2.** Respondent's attorney challenged the search warrant by which police acquired the *second* blood sample from respondent. But he did not challenge the admissibility of the

■ The exclusionary rule operates generally to vindicate a defendant's fourth amendment rights by deterring police from engaging in illegal searches by excluding evidence acquired by means of the illegality from admission in the criminal trial. *See State, City of Minneapolis v. Cook*, 498 N.W.2d 17, 20 (Minn.1993). Here, the DNA evidence was acquired by means of a court order. The police were involved in the collection of this evidence to the extent that a probation officer informed respondent of his obligation under the court order to provide the sample, and arranged for the sample to be taken.

■ Respondent argues that the state has waived the applicability of the exclusionary rule by failing to raise the issue in the district court. *See State v. Botsford*, 630 N.W.2d 11, 16 (Minn.App.2001), *review denied* (Minn. Sept. 11, 2001). But to determine whether respondent was prejudiced by his attorney's failure to move to suppress the DNA evidence, this court must determine whether there were any grounds upon which such a motion could have prevailed. *See Gates v. State*, 398 N.W.2d 558, 562 (Minn.1987) (holding that where defendant could not show the evidence was suppressible, there was no prejudice from attorney's failure to move to suppress and therefore no ineffective assistance of counsel).

■ The forced removal of blood from the body for the purpose of scientific testing, such as the DNA testing conducted here, is a search for purposes of the fourth amendment. *In re Welfare of J.W.K.*, 583 N.W.2d 752, 755 (Minn.1998); *see Kruger v. Erickson*, 875 F.Supp. 583, 588 (D.Minn.

DNA evidence from the tests conducted on the first sample, acquired by court order under the 1998 sentence.

1995) (holding withdrawal of blood for DNA testing under Minn.Stat. § 609.3461 was a search and seizure), *aff'd* 77 F.3d 1071 (8th Cir.1996) (relying on alternative grounds of lack of jurisdiction).

■ Thus, although the blood sample taken here was taken pursuant to a court order, not in the course of a police investigation, it was the type of intrusion covered by the Fourth Amendment. Further, although respondent does not claim the blood sample was initially taken in violation of the Fourth Amendment, the supreme court has recognized that in some situations, non-constitutional violations may require suppression of evidence acquired through the violation. *State v. Smith,* 367 N.W.2d 497, 504 (Minn.1985) (holding that although statutory violations may require suppression, "a technical violation which did not subvert the basic purpose of the statute" did not).

This court determined in *Johnson I* that it was error to require respondent to register as a sex offender under Minn.Stat. § 243.166, subd. 1(a)(1), a statute with requirements very similar to those of Minn. Stat. § 609.3461, subd. 1, under which respondent was ordered to supply a blood sample for DNA testing. The error in requiring respondent to supply the blood sample was not a technical violation of the statute. On the contrary, the court erred in classifying respondent among those required to comply, an error that resulted in the state acquiring highly incriminating evidence.

■ We acknowledge that the primary purpose of the exclusionary rule is not to deter errors made by the courts. *See Cook,* 498 N.W.2d at 20 (holding that the purpose of suppression is not "to affirm the integrity of the courts" but to deter police from engaging in illegal searches). But Minnesota has not adopted the narrow view of the exclusionary rule

that is represented by the "good faith" exception to that rule. *See State v. Zanter,* 535 N.W.2d 624, 634 (Minn.1995). Thus, even where police have relied in good faith on judicial approval of a warrant, courts in Minnesota are bound to exclude the evidence seized under the warrant, if invalid, even though the defect in the warrant is attributable to the court approving it. *Id.*

Respondent would be deprived of any meaningful remedy for the ineffectiveness of his attorney if the DNA evidence could be admitted against him in the later prosecution for the 1992 offense. The 1998 conviction (prostitution scam) is not affected by that evidence, and the intrusion itself, which allowed the state to obtain a sample of his bodily fluid for future use, cannot be undone. The mere removal of the DNA evidence from the BCA database, after its use to convict him of an offense resulting in a 146–month prison sentence, is a meaningless remedy. Therefore, we conclude that the DNA evidence, acquired through a fundamental violation of Minn.Stat. § 609.3461, subd. 1, would have been suppressed had respondent's attorney challenged it. Had the DNA evidence, the critical evidence presented against respondent, been suppressed, respondent in all probability would not have pleaded guilty to that offense. *See Berg v. State,* 557 N.W.2d 593, 596 (Minn.App.1996) (noting rule that defendant who pleads guilty and claims ineffective assistance of counsel must show a reasonable probability that absent counsel's errors she would not have pleaded guilty). Therefore, respondent has shown that he was prejudiced by his attorney's failure to move to suppress the DNA evidence.

## II. Knaffla rule

■ The state asserts that the Knaffla rule bars respondent from chal-

lenging the admissibility of the DNA evidence because he failed to raise that issue on direct appeal in the previous case. We disagree. Ordinarily once a petitioner has directly appealed a conviction, a postconviction court will generally not consider any claim raised in the direct appeal, or any claim known at the time of the direct appeal, but not raised. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001); *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). Postconviction claims of ineffective assistance of trial counsel are generally precluded if known at the time of direct appeal. *Black v. State*, 560 N.W.2d 83, 85 (Minn.1997).

■ However, a common sense reading of *Knaffla* shows that it is a procedural bar only when a defendant attempts to bring a postconviction petition after filing a direct appeal regarding the same criminal conviction, not where there is a separate and distinct criminal prosecution. Here we have a separate and distinct criminal prosecution. When a criminal case is reversed and remanded for a new trial, both sides begin anew. After *Johnson I*, a plea agreement was reached between appellant and respondent. As part of the plea agreement, respondent pleaded guilty to promotion of prostitution by fraud and was sentenced. That was the end of *Johnson I*. The present charge against respondent, first-degree criminal sexual conduct, is a far more serious charge and arises out of circumstances totally unrelated to the facts in *Johnson I*. Evidence in this case starts over. Nothing is "grandfathered" in from *Johnson I*. Appeals issues in this case will be from this case. There may be some seeming overlap here from the facts pertinent to the appeal in *Johnson I*, but that overlap cannot denigrate respondent's constitutional right to appeal issues in a new and different case.

Put another way, respondent successfully challenged the requirement to register as a sexual offender in *Johnson I*. That he did not include in that appeal the requirement to provide a DNA sample does not prevent him from arguing ineffective assistance of counsel regarding that DNA sample in this first-degree criminal sexual conduct case.

■ We disagree with appellant's argument that the court's order requiring a DNA sample is a collateral consequence of the sentence imposed and is not subject to review under Minn. R.Crim. P. 27.03. Rule 27.03, subd. 9, states:

> The court at any time may correct a sentence not authorized by law. The court may at any time modify a sentence during either a stay of imposition or stay of execution of sentence except that the court may not increase the period of confinement.

■ Direct consequences are those that flow definitely, immediately, and automatically from a guilty plea, namely, the maximum sentence to be imposed and the amount of any fine. All other consequences are collateral. *Alanis v. State*, 583 N.W.2d 573, 578 (Minn.1998). In the prostitution scam case, registration was not a collateral consequence. The district court judge directly imposed the registration requirement. In that case, the requirement that respondent provide a DNA sample was directly imposed by the district court judge at sentencing. The district court's March 25, 1998 order issued in the "prostitution scam" case stated that respondent must submit a "biological specimen for DNA analysis per MS 609.3461." The requirement to provide a DNA sample was directly imposed by a district court judge in the prostitution scam case and should not be dismissed as a "collateral consequence." It would gut the spirit of the exclusionary rule if mistakes by dis-

trict courts "did not count" so tainted evidence comes in anyway. If the only unit of government really held accountable is law enforcement, would the judiciary retain any credibility?

## III. Exclusionary rule

 The state argues that the postconviction court erred in applying the exclusionary rule to a sentencing order issued in the prostitution scam case. The state asserts that the exclusionary rule applies only where there is police misconduct, not a reversed court sentencing order. Respondent argues that because appellant failed to raise the applicability of the exclusionary rule in the postconviction court, he has waived it.

We decline to address the issue presented by the state that the exclusionary rule applies only where there is police misconduct and not a district court sentence reversed on appeal. This issue had not been briefed and argued before the postconviction court. The record is incomplete and inadequate for a meaningful appeal. *Ferguson v. State*, 645 N.W.2d 437, 448 (Minn. 2002) (stating that arguments raised for the first time on appeal will not be considered).

### DECISION

The postconviction court did not erroneously conclude that respondent was deprived of effective counsel when there was no motion made to suppress a DNA sample linking respondent to a crime when that sample was taken pursuant to a sentence that was reversed on appeal.

The Knaffla procedural bar applies only when a defendant attempts to bring a postconviction petition after filing a direct appeal regarding the same criminal conviction, not where there is a separate and distinct criminal prosecution.

The record is incomplete and inadequate for a meaningful review of whether the exclusionary rule applies only where there is police misconduct and that it can never be applied when there is an error of law by a court. The issue had not been briefed and argued before the postconviction court; thus, it is not before this court.

**Affirmed.**

LANSING, Judge (dissenting).

I respectfully dissent because I believe that the exclusionary rule does not apply to the DNA sample. Accordingly, I believe the postconviction court erred as a matter of law in concluding that Johnson received ineffective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986) ("a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim [of ineffective assistance of counsel]" based on failure to seek suppression of evidence); *see also State ex rel. Fruhrman v. Tahash*, 275 Minn. 242, 244–45, 146 N.W.2d 174, 176 (1966) ("[N]o inadequacy can be attributed to counsel for failing to make a motion, which should have been denied had it been made.").

The postconviction court concluded there was a "reasonable probability" that a motion to suppress the DNA sample would have been granted because the sample was "ordered illegally." But even assuming this court's prior decision in this case invalidated the basis for ordering Johnson to provide the DNA sample, it must still be determined whether exclusion is the appropriate remedy for that invalid seizure. *See New Jersey v. T.L.O.*, 469 U.S. 325, 334, 105 S.Ct. 733, 738 n. 3, 83 L.Ed.2d 720 (1985) (explaining that the question of whether evidence should be excluded from a criminal proceeding involves two discrete inquiries: whether the evidence was ille-

gally seized, and whether the exclusionary rule is the appropriate remedy for the violation).

It is well-settled in Minnesota that "[t]he purpose of suppression [of illegally obtained evidence] is not to vindicate a defendant's rights nor to affirm the integrity of courts, but to deter police from engaging in illegal searches." *State, City of Minneapolis v. Cook*, 498 N.W.2d 17, 20 (Minn. 1993). In this case there was no misconduct to deter—by police or any other state authority. Johnson's probation officer collected the biological specimen on the basis of a valid court order. The district court issued that order in accordance with a statutory requirement, *see* Minn.Stat. § 609.117 (stating that the court "shall order" collection of a biological specimen from specified offenders), and the order remained valid and binding until this court subsequently rejected the district court's construction of the sex-offender registration statute.[3] By that time, the initial sample had already been collected, analyzed, and linked to the unsolved 1992 sexual assault, and the state had already charged Johnson with first-degree criminal sexual conduct in connection with that assault. Under these facts, the exclusionary rule would have no deterrent effect and should therefore not apply. *See State v. Smith*, 652 N.W.2d 546, 549 (Minn.App. 2002) (exclusionary rule should only be used when its deterrent value outweighs social costs of excluding probative, but illegally obtained evidence).

Because application of the exclusionary rule to the DNA sample would not be appropriate, Johnson did not receive ineffective assistance of counsel due to his attorney's failure to seek suppression of the sample.

---

3. Because the sentencing order that included the DNA sample requirement was not merely "facially valid," *U.S. v. Leon*, 468 U.S. 897, 902, 104 S.Ct. 3405, 3410, 82 L.Ed.2d 677 (1984), there is no question in this case of whether the probation officer who collected the sample acted in "good faith" reliance on a defective order. Accordingly, the fact that the Minnesota Supreme Court has not recognized a good-faith exception to the warrant requirement under the Minnesota Constitution does not affect the analysis.