Kevin JOHNSON, Respondent,

v.

STATE of Minnesota, petitioner, Appellant.

No. C8–02–790.

Supreme Court of Minnesota.

Jan. 15, 2004.

Mike Hatch, Attorney General, St. Paul, MN, Amy Klobuchar, Hennepin County Attorney, David C. Brown, Asst. County Attorney, Minneapolis, MN, for Appellant.

John M. Stuart, State Public Defender, Davi E. Axelson, Asst. State Public Defender, Minneapolis, MN, for Respondent.

## OPINION

MEYER, Justice.

We are presented with the issue of whether DNA evidence seized pursuant to a court order under a sentencing statute—an order later determined to have misconstrued the meaning of the statute—must be suppressed by virtue of the exclusionary rule. The court of appeals held that the evidence must be suppressed. We reverse.

On September 21, 1992, 17–year–old N.B. was sexually assaulted at knifepoint. The Bureau of Criminal Apprehension (BCA) placed in its database a DNA profile from a vaginal swab it took from the victim. At that time, authorities were unable to link a suspect to the crime. Nearly seven years later, on April 19, 1999, BCA linked the DNA sample to respondent Kevin Johnson.

The DNA sample that linked Johnson to the 1992 sexual assault was taken in 1998 as part of a court order, issued as a condition of probation for Johnson's part in a 1997 crime.[1] In that case, Johnson was originally charged with first-and third-degree criminal sexual conduct under Minn. Stat. §§ 609.342, subd. 1(d), and 609.344, subd. 1(c) (2002), but pleaded guilty to the reduced charge of promoting prostitution by fraud ("prostitution scam case").[2] In connection with Johnson's guilty plea, the district court ordered Johnson to register

as a predatory offender and submit a DNA sample. The court based its order on Minn.Stat. §§ 243.166, subd. 1(1) (2002) and 609.3461, subd. 1 (1996),[3] which require persons convicted of certain enumerated offenses and all other crimes "arising out of the same set of circumstances" to register as predatory offenders and submit DNA samples, respectively.

Johnson later moved to withdraw his guilty plea in the prostitution scam case, claiming that during the plea bargaining process his attorney did not inform him of his duty to register as a sex offender and that, had he known that he had to register as a sex offender as a condition of his plea, he would not have pleaded guilty. On April 20, 1999, the district court denied Johnson's motion to withdraw his plea. The court of appeals reversed, holding that the crime of promoting prostitution by fraud did not "arise out of the same set of circumstances" as his original charge and therefore Johnson could not be required to register as a sex offender. *State v. Johnson*, Nos. C9–99–1046 and CX–99–1265, 2000 WL 365051, at *2 (Minn.App. Apr.11, 2000), *rev. denied* (Minn. June 13, 2000) (*Johnson I* ).

At a November 13, 2000, *Rasmussen* hearing, Johnson's attorney made his first appearance in the 1992 sexual assault case. At this appearance, the attorney moved to suppress the 1999 DNA sample taken by Sergeant Martinson pursuant to warrant, but did not object to the 1998 DNA sample taken pursuant to the erroneous district

---

1. Based upon an initial link between this sample and the 1992 sexual assault, Sergeant Bernie Martinson executed a search warrant to take a second blood sample from Johnson on May 5, 1999.

2. Johnson admitted to presenting minor T.H.S. as a prostitute under his control in order to lure men into paying him money to

have sex with T.H.S. Johnson admitted that he took money from the men but did not allow them to have sex with T.H.S.

3. Minnesota Statutes § 609.3461 (1996) has been renumbered as Minn.Stat. § 609.117 (2002).

court order.[4] The court denied the motion to suppress. On November 15, 2000, Johnson pleaded guilty to the 1992 sexual assault and the court sentenced him to 146 months in prison. Johnson appealed this sentence but later moved to stay the appeal and pursued postconviction relief.

On November 21, 2001, Johnson brought this claim for postconviction relief in the 1992 sexual assault case. He argued that he was deprived of his right to effective assistance of counsel by the failure of his attorney to file a motion to suppress the first DNA sample that was obtained based on Johnson's promotion of prostitution by fraud conviction.[5] But for counsel's deficient performance, Johnson argued, the district court would have suppressed the DNA sample and he would not have pleaded guilty to criminal sexual conduct.

The postconviction court noted that, at the time of the *Rasmussen* hearing, the court of appeals had already issued its decision in *Johnson I,* in which it held that Johnson's prostitution scam conviction did not "arise out of the same set of circumstances" as the original charge against Johnson. Accordingly, the postconviction court concluded that Johnson's counsel should have moved to suppress the DNA evidence, which had been ordered pursuant to identical statutory language as the registration order in *Johnson I*. The court also concluded that there was a reasonable probability that Johnson suffered actual prejudice as a result of his attorney's errors. Therefore, the court vacated Johnson's plea.

The state appealed, alleging that the postconviction court erred in concluding that the exclusionary rule is applicable when a district court's erroneous interpretation of a statute led to an unauthorized seizure of DNA evidence. Johnson argued that the state had waived its argument that the exclusionary rule did not apply by failing to raise the issue before the postconviction court. Although the court of appeals agreed with Johnson's waiver argument, it noted that the exclusion of the DNA evidence was necessary to provide Johnson with a "meaningful remedy" for the violation of his Fourth Amendment rights. *Johnson v. State,* 654 N.W.2d 126, 134 (Minn.App.2002) (*Johnson II* ). We granted review and now reverse.

I.

As a threshold matter, we must decide whether the state waived its argument with respect to the exclusionary rule by failing to raise it before the postconviction court. Generally, an appellate court will not consider arguments that are made for the first time on appeal. *State v. Grunig,* 660 N.W.2d 134, 136 (Minn.2003). One purpose of this rule is to encourage the development of a factual basis for claims at the district court level. *See Grunig,* 660 N.W.2d at 137 (discussing *Garza v. State,* 632 N.W.2d 633, 637 (Minn.2001)). The waiver rule is not absolute, however, and an appellate court may address an issue in the interests of justice if addressing the issue will not work an unfair surprise on a party. *State v. Sorenson,* 441 N.W.2d 455, 457 (Minn.1989).

4. The failure of Johnson's attorney to object to the 1998 DNA evidence seized pursuant to the district court order is noteworthy because the case file of Johnson's trial attorney contained multiple notations by Johnson's appellate attorney in the prostitution scam case that the DNA testing statute should not have applied to Johnson.

5. Johnson also argued that the 1999 DNA sample, taken pursuant to a warrant, should have been excluded as the "fruit of the poisonous tree" of the original DNA evidence seized in 1998. *See State v. Staats,* 658 N.W.2d 207, 211 (Minn.2003).

We believe that the interests of justice weigh in favor of allowing the state to raise the exclusionary rule issue on appeal. The procedural posture of this case provided little opportunity to raise the issue to the postconviction court; i.e., the court granted postconviction relief without an evidentiary hearing. The applicability of the exclusionary rule was a necessary step in the reasoning of the postconviction court and the court of appeals addressed the rule at length in its opinion.[6] *See Johnson II*, 654 N.W.2d at 134. The parties agree on the relevant facts and only dispute whether the exclusionary rule should apply to the facts of this case, which dispute is largely an issue of law. For these reasons, we conclude that the interests of justice are served by permitting the state to raise the issue on appeal.

## II.

■■■ We now consider whether the failure of Johnson's counsel to move to suppress the DNA evidence deprived Johnson of his Sixth Amendment right to effective assistance of counsel. We review de novo decisions on ineffective assistance of counsel, which involve mixed questions of law and fact. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn.2003) (applying de novo review to an appeal of a postconviction ruling). Ineffective assistance of counsel claims require proof of two elements: objective deficiency of counsel and actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Rhodes*, 657 N.W.2d at 842. If either one of these elements is dispositive, the reviewing court need not address both issues. *Rhodes*, 657 N.W.2d at 842.

■■■ A claim of ineffective assistance of counsel may not rest on the failure of an attorney to make a motion that would have been denied if it had been made. *State v. Rainer*, 502 N.W.2d 784, 788 (Minn.1993) (citing *State ex rel. Fruhrman v. Tahash*, 275 Minn. 242, 244–45, 146 N.W.2d 174, 176 (1966)). In cases in which the petitioner pleads guilty, the petitioner must demonstrate a reasonable probability that, but for counsel's ineffective representation, he would not have entered his plea. *State v. Ecker*, 524 N.W.2d 712, 718 (Minn.1994). On the actual prejudice prong, the reviewing court considers all of the evidence before the district court. *Gates v. State*, 398 N.W.2d 558, 562 (Minn.1987).

In this case, the actual prejudice prong turns upon whether the district court in the sexual assault case would have granted a motion to suppress the DNA evidence if one had been made. Johnson urges this court to hold that had defense counsel made a motion to suppress the DNA evidence, the court would have applied the exclusionary rule and suppressed the evidence. The state's position is that Johnson was not prejudiced by defense counsel's failure to move to suppress because the exclusionary rule should not have been applied to a court-ordered DNA sample.

The Fourth Amendment of the United States Constitution and Article 1, § 10 of the Minnesota Constitution guarantee that a person may not be subjected "to the forced removal of blood for scientific testing in the absence of probable cause and either a search warrant authorizing the intrusion or exigent circumstances excusing the need for a warrant." *In re Welfare of J.W.K.*, 583 N.W.2d 752, 755 (Minn. 1998). Minnesota Statutes § 609.3461 directs the court to order offenders convict-

---

6. Although the court of appeals stated that it did not address the applicability of the exclusionary rule, it discussed the issue extensively in its analysis of the prejudice prong of *Strickland*. *Johnson II*, 654 N.W.2d at 133–34.

ed of certain enumerated offenses to provide biological specimens for the purpose of DNA analysis. These enumerated offenses include such crimes as robbery, burglary, murder, and criminal sexual conduct. In addition, an offender shall be required to produce a specimen for DNA analysis if convicted of an offense "arising out of the same set of circumstances" as an enumerated offense. Johnson does not claim the removal of his blood was illegal because the statute is unconstitutional.[7] Rather, he claims the removal of his blood was illegal because his offense did not "arise out of the same set of circumstances" as an enumerated offense. Therefore, the legality of the DNA sample for purposes of this case turns on whether it was authorized by statute.

In *Johnson I*, the court of appeals interpreted the meaning of the requirement in Minn.Stat. § 243.166 that persons convicted of crimes "arising out of the same set of circumstances as an enumerated offense" must register as predatory offenders. The court held that Minn.Stat. § 243.166 did not require Johnson to register as a predatory offender because the crime of promoting prostitution by fraud did not "arise out of the same set of circumstances" as criminal sexual conduct.[8] Because Johnson challenged only the order requiring him to register as a predatory offender, the court in *Johnson I* did not explicitly address the legality of the district court's DNA order. However, the district court's DNA order was based on Minn.Stat. § 609.3461, which has operative language parallel to Minn. Stat. § 243.166. Because *Johnson I* interpreted the operative language of Minn. Stat. § 609.3461, it implicitly decided that

the requirement of that section, that Johnson be convicted of a crime "arising out of the same set of circumstances" as criminal sexual conduct, was not met. Because the requirements of Minn.Stat. § 609.3461 were not met, the district court's DNA order constituted an illegal search.

The Fourth Amendment contains no provision preventing the admission of evidence obtained as the fruit of an illegal seizure. To give practical effect to the commands of the amendment, the United States Supreme Court crafted the exclusionary rule, an evidentiary rule that prevents the admission of illegally seized evidence. *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (applying the rule to the states); *see also State v. Thompson*, 273 Minn. 1, 20, 139 N.W.2d 490, 505 (1966). However, we have stated that the exclusionary rule need not be applied rigidly to every situation in which evidence is seized illegally. *See State v. Wiberg*, 296 N.W.2d 388, 393 (Minn.1980).

We have never before determined whether DNA evidence seized pursuant to a court order—an order later determined to be erroneous—must be suppressed by virtue of the exclusionary rule. We have, however, previously addressed the exclusionary rule in situations in which certain evidence was allegedly obtained in violation of state statutes.

For example, in *State v. Smith* the defendant claimed that welfare authorities provided police with the defendant's address in violation of the Minnesota Govern-

---

7. In this case we do not reach the question of whether Minn.Stat. § 609.3461 is an unreasonable search under either the Fourth Amendment of the United States Constitution or Article 1, § 10 of the Minnesota Constitution.

8. We do not adopt the court of appeals' conclusion that Johnson's conviction for promoting prostitution by fraud did not "arise out of the same set of circumstances" as criminal sexual conduct as that issue is not before us.

ment Data Practices Act. *State v. Smith*, 367 N.W.2d 497, 500 (1985). The police obtained a search warrant for the address that resulted in the seizure of robbery evidence. *Id.* We noted that if there was a violation of the Data Practices Act, the violation of the statute was technical only and did not subvert the purpose of the statute. *Smith*, 367 N.W.2d at 504. Because the Act was not intended to prevent police from obtaining the whereabouts of criminal suspects, we refused to suppress the evidence obtained through the violation of the statute. *See Smith*, 367 N.W.2d at 504 n. 1 (stating that the "main protection" of the act for welfare clients is the protection of the disclosure of their status as welfare clients).

In *State v. Lien*, we concluded that the police had not made a sufficient showing to justify a nighttime search and the magistrate erred in not requiring a clearer showing of need. *State v. Lien*, 265 N.W.2d 833, 840 (Minn.1978). Nevertheless, we held that exclusion of the evidence seized pursuant to that warrant was not required. *Id.* First, we noted that any error in the issuance of the warrant was caused solely by the magistrate. *Id.* Second, we reasoned that, because the search was executed "at a reasonable hour when most people are still awake" and did not take the defendant by surprise, the purposes of the statutory prerequisites for a nighttime warrant would not be furthered by suppression. *Id.* at 841.

The considerations involved in *Smith* and *Lien* inform our decision today. Although both of those cases involved police activity, the errors in *Smith* and *Lien* were committed by civil servants and judicial officers, respectively. *See Smith*, 367 N.W.2d at 503; *Lien*, 265 N.W.2d at 840. We noted in both *Smith* and *Lien* that allowing the admission of evidence did not frustrate the purposes of the statutes in

question. *Smith*, 367 N.W.2d at 504; *Lien*, 265 N.W.2d at 841.

 In this case, the district court ordered the seizure of Johnson's DNA based upon its conclusion that a charge of promoting prostitution by fraud was a crime "arising out of the same set of circumstances" as the originally charged crime, thus subjecting Johnson to the requirements of submitting a DNA sample under Minn.Stat. § 609.3461. The record indicates that the district court reviewed the complaint, the presentence investigation report, Johnson's version of the facts, the victim's statement, and arguments of counsel, and then concluded that the plea on the prostitution charge arose out of the same set of circumstances as the originally charged crime. There was no controlling appellate decision to guide the district court's ruling in this regard. The fact that the court's reasoned conclusion was reversed on appeal does not lead us to conclude that the court-ordered DNA evidence must be suppressed. The statute authorizing the production of a DNA sample for certain enumerated sex crimes is a public safety statute primarily intended to "serve[ ] the legitimate governmental interest of assisting investigation and prosecution of sex crimes." *Kruger v. Erickson*, 875 F.Supp. 583, 588 (D.Minn.1995). Furthermore, the police became involved only after the court ordered the production of the evidence, at which time they secured a second blood sample pursuant to a warrant. Neither the statutory purpose of Minn.Stat. § 609.3461 nor the goal of preventing police misconduct would be served by suppression of the evidence in this case.

Because the exclusionary rule does not apply, we conclude that Johnson did not suffer actual prejudice from his attorney's failure to move for the suppression of the DNA evidence. As the actual prejudice prong is dispositive, we need not decide

whether the performance of Johnson's attorney fell below an objective standard of reasonableness. We therefore reverse the ruling of the court of appeals on Johnson's ineffective assistance of counsel claim.

Reversed.