**STATE of Minnesota, Appellant,**

v.

**Joseph Steven HEANEY, Respondent.**

**No. A03–1401.**

Court of Appeals of Minnesota.

March 30, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Richard W. Jackson, Jr., Houston County Attorney, Caledonia, MN, for appellant.

Gregory B. Schultz, Caledonia, MN, for respondent.

Considered and decided by ANDERSON, Presiding Judge, STONEBURNER, Judge, and HUDSON, Judge.

## OPINION

STONEBURNER, Judge.

Respondent Joseph Steven Heaney is charged with four counts of criminal vehicular operation resulting in death, and four counts of criminal vehicular operation resulting in substantial bodily harm, as a result of a one-car accident that occurred in Houston County. One passenger died at the scene of the accident and another passenger was seriously injured. The state appeals a district court order suppressing Heaney's blood plasma sample and test results on the sample subpoenaed from a Wisconsin hospital where Heaney was treated following the accident. We conclude that the district court erred by suppressing the sample for violation of due process because Heaney's due process rights were not violated when the Wisconsin court ordered production of the sample by subpoena rather than search warrant. But because the district court correctly concluded that the evidence is inadmissible under the Minnesota physician-patient privilege, we affirm the district court's exclusion of the evidence.

## FACTS

Respondent Heaney rolled his vehicle in Houston County causing the immediate death of one passenger and critical injuries to another passenger. A police officer arrived at the scene minutes after the accident and told Heaney that he detected the odor of an alcoholic beverage on Heaney's breath. Heaney told the officer that he had been driving, that it was his friend's birthday, and that they had consumed alcohol earlier in the evening. Heaney tested .101 on a PBT.

Heaney was transported by ambulance to the nearest appropriate medical center, which was in La Crosse, Wisconsin. Houston County police chief investigator Gary Eddy arrived at the hospital approximately an hour and forty-nine minutes after the estimated time of the accident. Ambulance personnel who had transported Heaney to the hospital told Eddy that they had noted the odor of alcohol on Heaney's

breath, and that Heaney had told them he was the driver of the car.

Eddy spoke with Heaney a few minutes later. Heaney said he did not want to speak with the police about the accident at that time. Eddy read him the Minnesota Implied Consent Advisory form, including paragraph 3, which states, "Because I also have reason to believe you have violated the Criminal Vehicular Homicide or Injury Laws, a test will be taken with or without your consent." Eddy also read paragraphs 4 and 5 of the Advisory, advising Heaney of his right to speak to an attorney and that if a test is unreasonably delayed or refused, Heaney would be considered to have refused the test.

Heaney then asked to speak with an attorney. Because Heaney was being treated at the medical center, he was not able to speak with his attorney until two hours and nineteen minutes after the time of the accident. After speaking to his attorney, Heaney initially agreed to submit to Eddy's request for a blood test.

While Eddy was waiting for a laboratory technician to arrive to take the blood test, the attending physician told Eddy that a medical blood test had been obtained and that records of that test could be subpoenaed. The parties stipulated that Heaney's blood plasma tested by the medical center was collected an hour and twenty-five minutes after the accident. Prior to leaving the hospital, Eddy was shown documentation that testing of the sample taken from Heaney by hospital staff showed an alcohol concentration of .144.

When the laboratory technician arrived, Heaney refused to submit to a blood test and stated that he would take a urine test instead. The officer did not demand that Heaney give a blood sample.[1] Heaney gave a urine sample about three hours after the time of the accident.

The Minnesota Bureau of Criminal Apprehension subsequently tested the urine sample and reported an alcohol concentration of .08. The state contends that the type of extrapolation that can be made from a blood sample cannot be made from a urine sample to prove what Heaney's alcohol concentration would have been at the time of the accident.

Eddy subsequently gave the La Crosse County District Attorney's office a request for production of documents and a supporting affidavit, requesting an order requiring the medical center to produce Heaney's medical records, quality control documents for equipment used in treatment and testing related to the records, and the original blood plasma sample obtained from Heaney. A La Crosse County Deputy District Attorney obtained a "Subpoena for Documents, Sections 968.13 and 968.135," signed by the judge of La Crosse County Wisconsin Circuit Court, and an order, requiring production of the requested items. Eddy received the requested medical records by mail, including results of the alcohol concentration test, showing a "blood plasma alcohol concentration of .144." Eddy picked up the blood plasma sample from the medical center and delivered it to the BCA lab in St. Paul. The BCA test of the sample showed an alcohol concentration of .14.

The state charged Heaney with four counts of criminal vehicular operation resulting in death under Minn.Stat. § 609.21, subd. 1(1), subd. 1(2), subd. 1(3), and subd. 1(4) (2002), and four counts of criminal vehicular operation resulting in substantial bodily harm under Minn.Stat. § 609.21, subds. 2a(1), 2a(2)(i), 2a(3) and 2a(4)

---

1. The officer has made a statement that, in his past experience, this medical center would not take a blood test at his request when the patient refused to give a blood test.

(2002). Several of the counts require the state to prove that Heaney had an alcohol concentration of .10 or more at the time of the accident, or that he had an alcohol concentration of .10 or more as measured within two hours of the time of the accident.

Heaney moved to suppress the sample and records obtained from the hospital, and the urine test, and for dismissal of the charges for lack of probable cause. Among other arguments not involved in this appeal, he argued that the blood plasma sample and test results obtained by the hospital are privileged information, that he did not authorize their disclosure, and that the information was obtained in violation of the physician-patient privilege under Minn.Stat. § 595 .02, subd. 1(d). He also argued that the blood plasma sample was obtained in violation of the subpoena provisions of Rule 22 of the Minnesota Rules of Criminal Procedure, and that his due process rights were violated because Wisconsin does not permit seizure of a blood plasma sample from a medical facility by subpoena, but only by search warrant. Although the district court denied Heaney's motion to dismiss the charges, it granted Heaney's motion to exclude the blood plasma sample and the results of tests conducted on the sample because the evidence was obtained in violation of Minn.Stat. § 595.02, subd. 1(d), the physician-patient privilege. In an amended order, the district court also based suppression of the blood plasma on a violation of due process and a violation of Rule 22 of the Minnesota Rules of Criminal Procedure because a subpoena, rather than a warrant, was used to obtain the sample. This appeal followed.

## ISSUES

1. Did the district court clearly err by suppressing the blood plasma sample on the basis that Heaney's due process rights and Minn. R.Crim. P. 22 were violated by use of a subpoena rather than a search warrant?

2. Did the district court err by applying the Minnesota physician-patient privilege to exclude Heaney's blood plasma sample and alcohol-concentration test results?

## ANALYSIS

### I. Critical impact

 In order to appeal a pre-trial order under Minnesota Rule of Criminal Procedure 28.04, subd. 2(1), the state "must clearly and unequivocally" show that the district court's order will have a "critical impact" on the state's ability to successfully prosecute, and that the order constituted error. *State v. Zanter*, 535 N.W.2d 624, 630 (Minn.1995). The state is not required to show that the remaining evidence is so weak that all possibility of conviction has been destroyed or that absence of the evidence will result in dismissal; critical impact may be shown where lack of suppressed evidence significantly reduces the likelihood of conviction, or "where the effect is to seriously impede, although not to completely foreclose, continuation of the prosecution." *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn.1987) (citation omitted).

 In this case, the medical center's testing of Heaney's blood plasma is the only measure of his alcohol concentration made within two hours of the time of the accident, and several of the charges against Heaney require the state to prove that his alcohol concentration was over .10 at the time of, or as measured within two hours of, the accident. The state contends that the urine sample obtained almost three hours after the accident cannot be used, as a blood sample taken at that time

could have been, to extrapolate what Heaney's alcohol concentration would have been earlier.

We have held that suppressing a chemical test has a "critical impact" on prosecution in driving-while-impaired cases, even where non-test-related evidence of intoxication exists. *State v. Ault,* 478 N.W.2d 797, 798–99 (Minn.App.1991). And Heaney does not dispute that suppression has a critical impact on the prosecution. We conclude that the state has met its burden to show critical impact in this case.

## II. Due process

■ The district court agreed with Heaney's argument that the blood plasma sample was obtained in violation of Wisconsin due process requirements because the sample was obtained by a subpoena for documents under Wis. Stat. § 968.135 (2002), rather than by a search warrant under Wis. Stat. § 968.13 (2002). The Wisconsin statute under which the subpoena was issued states in part, "Upon the request of the attorney general or a district attorney and upon a showing of probable cause, under [statute] 968.12, a court shall issue a Subpoena Requiring the Production of Documents, as specified in section 968.13(2)." Wis. Stat. § 968.135 (2002).

■ Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996). "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing ... the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999).

Wisconsin Statutes section 968.13(2) defines "documents" as including, but not limited to "books, papers, records, recordings, tapes, photographs, films, or computer or electronic data." The state argues that the broad definition of "documents" could encompass a blood plasma sample. We agree with the district court that a blood plasma sample does not fit the definition of documents under the Wisconsin statute, because a sample is not documentary in nature.

The state argues that even if the sample does not qualify as a document, use of the subpoena under Wis. Stat. § 968.135 did not result in a due process violation because the showing of probable cause required for a subpoena and a search warrant is the same. We agree. The subpoena issued refers both to Wis. Stat. § 968.135, the provision for obtaining subpoenas, and Wis. Stat. § 968.13, the provisions for obtaining search warrants. The procedures for obtaining a search warrant and a subpoena are identical. An attorney general or district attorney is required to request a subpoena or a search warrant and only if the request is supported by evidence of probable cause will the subpoena or search warrant be issued. In each case, the standard for probable cause is the same. In this case, a judge reviewed the county attorney's request for a subpoena describing the evidence sought, and, based on the supporting affidavit, found sufficient probable cause to require production of the requested items. Respondent's due process rights were vindicated when a neutral, detached judge reviewed the request and found probable cause to order production of the sample.

■ "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Brooks v. Comm'r of Pub. Safety,* 584 N.W.2d 15, 19 (Minn.App.1998) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)), *review denied*

(Minn. Nov. 24, 1998); *State v. Hardwick*, 144 Wis.2d 54, 422 N.W.2d 922, 924 (App. 1988). Both Minnesota and Wisconsin have adopted the approach for analyzing a procedural due process claim set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), that involves balancing three factors:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Brooks*, 584 N.W.2d at 19; *In the Matter of W.J.C.*, 124 Wis.2d 238, 369 N.W.2d 162, 163–64 (Ct.App.1985).

In this case, Heaney's interest in preventing an illegal seizure of evidence was vindicated because the evidence was produced pursuant to an order based on a judge's finding of probable cause that is not challenged by Heaney. There was no risk of an erroneous deprivation of his interest through the procedure used, and no "additional" procedural requirements were necessary to obtain a search warrant. We conclude that the district court erred by holding that Heaney's due process rights were violated merely because the sample was obtained by subpoena rather than search warrant.

We further conclude that, insofar as the use of a subpoena rather than a search warrant violates the Wisconsin statutes and Minn. R.Crim. P. 22,[2] such violation does not require application of the exclusionary rule. The Minnesota Supreme Court recently held that the exclusionary rule should not be applied to a DNA sample seized pursuant to a court order that was later determined to be erroneous. *Johnson v. State*, 673 N.W.2d 144 (Minn. 2004). The supreme court held that neither the purpose of the DNA statute nor the goal of preventing police misconduct would be served by suppression of the evidence, and declined to apply the exclusionary rule. *Id.* at 150. The supreme court reviewed previous cases declining to apply the exclusionary rule in situations in which evidence was obtained in violation of state statutes, where civil servants or judicial officers, rather than law enforcement, committed the errors, and the admission of the evidence did not frustrate the purpose of the statute. *Id.* (reviewing *State v. Lien*, 265 N.W.2d 833 (Minn.1978) and *State v. Smith*, 367 N.W.2d 497 (Minn. 1985)). Under those circumstances, the exclusionary rule does not apply.

The rationale set forth in *Johnson* applies to the case before us. Any violation of Wisconsin statutes or the Minnesota criminal rule in obtaining the sample did not rise to the level of a due process violation, was not induced by any actions of law enforcement, and does not frustrate the purposes of the involved statutes or the rule. There is no deterrent value in the use of the exclusionary rule to sanction these violations.

### III. Physician-patient privilege

The district court also excluded evidence of the sample and medical records, including alcohol-concentration test results on the sample, because the evidence was obtained in violation of Minnesota's physician-patient privilege:

> A licensed physician ... shall not, without the consent of the patient, be

2. The district court agreed with Heaney that Minn. R.Crim. P. 22 limits the use of a sub-poena to obtaining witnesses or documentary evidence and not objects such as the sample.

allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity. . . .

Minn.Stat. § 595.02, subd. 1(d) (2002).[3]

The statute has been applied in criminal cases by judicial assumption. . . . It is only where a medical examination is conducted solely for the purpose of obtaining evidence to be used in a criminal proceeding that we have held that the privilege does not apply because the physician-patient relationship does not exist.

State v. Gore, 451 N.W.2d 313, 318 (Minn. 1990) (citations omitted).[4]

■■■■ We agree with the state's assertion that if Heaney had been treated in a Minnesota hospital, the Minnesota physician-patient privilege would never have been implicated because Minnesota law gives a police investigator the right to demand a blood test, whether or not the driver consents to the test, in the course of investigating a suspected criminal vehicular homicide. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Condon, 497 N.W.2d 272, 275 (Minn.App.1993) (stating that when officer has probable cause to believe a driver is intoxicated and has committed criminal vehicular operation, the officer may order blood sample taken without obtaining driver's consent). We also agree with the state's assertion that, when an officer suspects a driver of criminal vehicular homicide, the officer is not bound

by his decision to read the implied consent advisory, and can order a driver suspected of criminal vehicular operation to submit to a blood test despite the driver's refusal. State v. Lee, 577 N.W.2d 730, 734 (Minn. App.1998), rev'd on other grounds, 585 N.W.2d 378 (Minn.1998). But the officer in this case did not demand a blood test. Therefore, cases based on the long-standing authority of a peace officer to require blood testing of a driver suspected of criminal-vehicular operation are not relevant to the state's attempt to admit evidence of this sample and testing, which were obtained purely for medical reasons.

■■■■ The parties agree that the sample taken from Heaney and alcohol-concentration test results on the sample are not privileged under Wisconsin's physician-patient privilege statute, which provides "no privilege concerning the results of or circumstances surrounding any chemical tests for intoxication or alcohol concentration as defined in Section 340.01(1v)." Wis. Stat. § 905.04(4)(f). "There is no privilege in trials for homicide when the disclosure relates directly to the facts or immediate circumstances of the homicide." Wis. Stat. § 905.04(4)(d). The parties agree that if the Wisconsin physician-patient privilege statute applies, evidence of the sample and test results would be admissible. But Minnesota's physician-patient privilege statute does not contain similar exceptions.

■■■■ To resolve this conflicts-of-law problem, the state first argues that because Heaney was treated in Wisconsin,

---

3. The state did not challenge whether the blood plasma sample and alcohol-concentration testing on the sample were necessary to enable medical treatment for Heaney.

4. In Gore, the supreme court held that Gore's testimony at trial about the amount of drugs he ingested and his attempt to slash his wrist in a suicide attempt after he murdered his ex-girlfriend, waived any privilege with respect to information obtained in a medical examination after the suicide attempt about the number of pills he had taken and the superficial nature of his wounds. 451 N.W.2d at 319.

and the entire physician-patient relationship occurred in Wisconsin, the Wisconsin physician-patient privilege and exceptions should be applied to this case. We disagree. Physician-patient privilege statutes are evidentiary rules that are not given extraterritorial effect.

> It is a general rule that the admission of evidence and the rules of evidence are rather matters of procedure, than matters attaching to the rights of parties. Therefore they are governed by the laws of the country where the court sits.... The law of evidence is the lex fori ... to be determined by the law of the country where the question arises, where the remedy is sought to be enforced, and where the court sits to enforce it.

*Jones v. Chicago, St. P.M. & O. Ry. Co.*, 80 Minn. 488, 491, 83 N.W. 446, 447 (1900).

▓▓▓ We note that the doctrine of "lex loci," under which the substantive law of the place of an accident was mechanically applied, has been replaced by a "better rule of law" analysis. *Milkovich v. Saari*, 295 Minn. 155, 164, 203 N.W.2d 408, 413 (1973). Although there has not been a similar case specifically replacing the doctrine of "lex fori," applying the procedural law of the forum, with a "better rule of law" analysis, we conclude that even under a "better rule of law" analysis, the Minnesota physician-patient privilege is the better rule of law.[5] The Minnesota legislature has set out a comprehensive method of obtaining blood-alcohol testing through the implied consent law that does not implicate the physician-patient privilege, because the tests required are at the direction of law enforcement for the purpose of obtaining evidence, which does not create a physician-patient relationship. The Minnesota legislature has not followed the example of Wisconsin in eliminating the medical privilege for the type of information involved in this case. Because a method exists for obtaining the required blood-alcohol testing evidence, we conclude that importing the Wisconsin exceptions to the physician-patient privilege to meet the rare fact situation presented by this case would unnecessarily dilute the protection afforded by the Minnesota legislature to treatment-related information disclosed in the physician-patient relationship.

▓▓▓ The state argues that where there is a conflicts-of-law situation in the context of a criminal prosecution, Minnesota courts prefer to apply an "exclusionary rule analysis rather than a traditional conflicts of law approach to determine the admissibility of evidence obtained in another state." *State v. Lucas*, 372 N.W.2d 731, 737 (Minn.1985).

The district court distinguished *Lucas* on the basis that much of the criminal activity in that case occurred in Wisconsin, but here, no portion of the criminal activity alleged occurred in Wisconsin. Although we reject this distinction as an insignificant factor in *Lucas*, we conclude that the district court correctly rejected an analysis under the exclusionary rule because the exclusionary rule is not relevant to Heaney's argument, which is based on the statutory physician-client privilege rule of evidence and not on a violation of a constitutional right by law enforcement.

▓▓▓ "The medical privilege is a statutory privilege and not a constitutional right." *In re D.M.C.*, 331 N.W.2d 236, 238 (Minn.1983) (citations omitted). *Johnson* rejected application of the exclusionary rule to non-law-enforcement violations of statutory, rather than constitutional rights. *Johnson*, 673 N.W.2d at 150. One of the

---

5. We do not mean to imply that the Minnesota legislature is not free to adopt exclusions to the physician-patient privilege for blood-alcohol testing.

considerations discussed in *Johnson* is whether admission of evidence obtained in violation of a statute directly frustrates the purpose of the statute. "The theory of all physician-patient privilege statutes is that patient's fear of revelation in court of information given to his doctor deter and discourage him from freely disclosing his symptoms to the detriment of his health." *Snyker v. Snyker*, 245 Minn. 405, 408, 72 N.W.2d 357, 359 (1955). We conclude that admission of the sample and test results on the sample would frustrate the purpose of the physician-patient privilege.

As noted above, the state correctly asserts that because Heaney was suspected of criminal vehicular operation, he had no right to refuse testing. *Condon*, 497 N.W.2d at 275 (stating that because officer had grounds to believe Condon had committed criminal vehicular operation, he had no right to refuse testing). The state relies on two unpublished opinions of this court to argue that because Heaney could not refuse testing, he could not revoke his implied consent to testing, and his implied consent waived any medical privilege regarding testing. In the unpublished cases relied on by the state, we held that blood samples drawn from unconscious drivers for medical treatment were admissible because an unconscious driver cannot waive implied consent to testing and any medical privilege was "defeated by [driver's] implied consent to chemical testing." *Lunderbreck v. Commissioner of Public Safety*, 2001 WL 1117675 at *2 (Minn.App. Sept.25, 2001) (permitting admission of the medically obtained blood sample and test in a license revocation hearing); *State v. Haugen*, 2000 WL 821554 (Minn.App. June 27, 2000) (permitting admission of medically obtained sample and test in prosecution of driver for misdemeanor and gross misdemeanor DWI). *Lundebreck* and *Haugen* are distinguishable to the extent that the drivers in those cases were unconscious, but we accept the state's argument that Heaney's legal incapacity to revoke his implied consent to chemical testing places him in a similar situation to drivers who physically cannot revoke implied consent because they are unconscious.

The conclusion reached in these unpublished opinions is appealing and undoubtedly serves the state's interest in dealing with drunk drivers. But we conclude that the assertion that a driver's implied consent to chemical testing at the request of law enforcement waives the physician-patient privilege for physician-ordered, medically necessary tests is not correct. The unambiguous language of the implied-consent statute establishes that the only testing impliedly consented to by a driver is testing administered at the direction of a peace officer. "Any person who drives … a motor vehicle within the state … consents to … a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol … *The test must be administered at the direction of a peace officer.*" Minn. Stat. § 169A.51, subd. 1(a) (emphasis added).

In this case, a test ordered by the police officer, even after Heaney purported to refuse blood testing, would have been admissible, and the physician-patient privilege would not have been implicated. We conclude, however, that implied consent does not automatically waive the physician-patient privilege that applies to information gathered by medical personnel exclusively for medical purposes. The Minnesota legislature has not exempted alcohol-concentration testing of a driver suspected of criminal vehicular operation done at the direction of medical personnel for medical reasons from the physician-patient privilege either directly, as the Wisconsin legislature has done, or through the implied consent statute. The district court did not

err by excluding Heaney's medical records, including the blood plasma sample and alcohol-concentration testing on the sample, under the physician-patient privilege.

## DECISION

A Wisconsin court's use of a subpoena, rather than a search warrant, to obtain respondent-driver's blood plasma sample from a medical center, based on probable cause to suspect respondent committed criminal vehicular operation, did not violate respondent's due process rights. The district court erred by applying the exclusionary rule to suppress evidence obtained in violation of a statute or rule where the violation was not caused by law enforcement and did not frustrate the purpose of the statute or rule.

Although respondent was legally incapable of withdrawing his implied consent to chemical testing administered at the direction of a peace officer, implied consent to such testing did not waive his right to assert a medical privilege for blood sampling and testing performed by medical personnel in the course of his medical treatment.

**Affirmed.**