*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1410**

State of Minnesota,
Respondent,

vs.

Quinten Devon Watkins,
Appellant.

**Filed November 10, 2025
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19HA-CR-21-2414

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Todd P. Zettler, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Amy Lawler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

After a stay and remand for postconviction proceedings, appellant challenges his conviction for second-degree criminal sexual conduct, arguing that he is entitled to

withdraw his *Alford* guilty plea because of ineffective assistance of counsel. In his pro se supplemental brief, he raises other challenges to the validity of his guilty plea. We affirm.

**FACTS**

The complaint states the following facts: C.T., the daughter of appellant Quinten Watkins, was born in October 2006. In 2021, when C.T. was 14 years old, she told her mother that she had been assaulted by appellant in 2014 or 2015. C.T. was then interviewed by a child protection investigator, whom she told that: (1) one day, when C.T. had not seen appellant for a while, a friend of appellant brought her to a townhome where adults were drinking and partying; (2) the home was green with white trim and belonged to a female friend of appellant; (3) C.T. went upstairs to lie down; (4) C.T. remembered appellant coming upstairs, "look[ing] scary because he was drunk"; (5) appellant got into bed with C.T., took off her shorts, and pulled down her underwear; (6) appellant penetrated C.T.'s vagina with his penis, which "felt weird and . . . hurt"; (7) appellant was moving back and forth; (8) C.T. felt something wet come out of his penis but didn't know what it was; (9) appellant zipped up his pants, laid down next to C.T., and said she would get into trouble if she told anyone; (10) the next morning, C.T. cleaned the "sticky and gooey" stuff off her underwear and body; (11) C.T. remembered feeling pain in her vagina days afterwards; and (12) C.T. had told her stepsister about this incident about three years before her interview with the investigator.

Appellant, when interviewed, denied sexually assaulting C.T. He said that she was making up the story because she was in trouble for talking to men on her cellphone; he also

2

said he did live near a female friend who threw parties at her townhome, but C.T. was never at the townhome.

Appellant was charged with criminal sexual conduct in the first degree—sexual penetration or contact with a person under 13 years old. Respondent State of Minnesota noticed its intent to seek an aggravated sentence based on appellant's abuse of a position of authority. A public defender was appointed, but appellant retained a private attorney, B.R., for his defense. In May 2022, B.R. appeared on behalf of appellant at an omnibus hearing, at which the district court found probable cause and scheduled a jury trial for December. In September 2022, appellant was charged with a conditional-release violation due to DWI charges. B.R. requested a continuation of the trial, but the district court denied the request. The day before the trial, B.R. met with appellant to discuss the case and filed a list of 13 witnesses.

On the first day of the trial, appellant entered an *Alford* plea[1] to an amended count of second-degree criminal sexual conduct. The state agreed to drop the aggravated sentence request and to seek a presumptive sentence of between 90 and 108 months in prison; B.R. requested a downward dispositional departure for appellant. Sentencing was scheduled for May 2023. In January 2023, appellant incurred another conditional-release violation pertaining to an Alcosensor program; in February 2023 he was charged with

---

[1] The transcript reflects that the plea was initially referred to as a *Norgaard* plea, *see State ex rel. Norgaard v. Tahash*, 110 N.W.2d 867, 872 (Minn. 1961) (stating defendant may plead guilty yet maintain innocence on account of lack of memory), but that it was actually an *Alford* plea, *see North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970) (stating that defendant may plead guilty based on factual record while maintaining innocence).

another DWI offense. Appellant appeared for a bond hearing; B.R. did not appear but had previously spoken with the state. The district court held appellant in custody until he completed a pre-sentence investigation (PSI) and a psychosexual evaluation; he was released in March 2023.

In May 2023 appellant failed to appear for sentencing, which resulted in a bench warrant and another conditional-release violation. After being arrested, appellant appeared in court in June 2023; sentencing was rescheduled and he was held without bail. At sentencing, B.R. represented appellant and again argued for a downward dispositional departure. Appellant denied the underlying allegations of sexual assault. The district court accepted appellant's *Alford* plea, denied his dispositional-departure request, and sentenced him to 108 months in prison.

In March 2024, appellant stayed his direct appeal to pursue postconviction relief, alleging an invalid guilty plea and ineffective assistance of counsel. There were two evidentiary hearings. At the first, in August 2024, appellant and four witnesses testified in support of appellant's allegation that B.R. was unprepared for trial because he had not contacted the favorable witnesses whom appellant wanted to testify. At the second, in October 2024, appellant waived his attorney-client privilege, and B.R. testified by Zoom. In March 2025, the postconviction court concluded that appellant did not receive ineffective assistance of counsel and denied his request to withdraw his guilty plea. In April 2025, this court granted appellant's motion to dissolve the stay.

4

**DECISION**

In the reinstated appeal, appellant argues in his principal brief that his guilty plea was made with ineffective assistance of counsel and was invalid. In his supplemental pro se brief, he argues that the plea must be withdrawn to avoid a manifest injustice and that the plea was neither intelligent nor voluntary.

## I.    Ineffective Assistance of Counsel

> When we review a postconviction court's denial of relief on a claim of ineffective assistance of counsel, we will consider the court's factual findings that are supported in the record, conduct a de novo review of the legal implication of those facts on the ineffective assistance claim, and either affirm the court's decision or conclude that the court abused its discretion because postconviction relief is warranted.

*State v. Nicks*, 831 N.W.2d 493, 503-04 (Minn. 2013). The defendant carries the burden of proving the facts. *State v. Boecker*, 893 N.W.2d 348, 350 (Minn. 2017).

An ineffective-assistance-of-counsel claim has two prongs; it requires both a showing that counsel's representation fell below an objective standard of reasonableness and a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *State v. Ellis-Strong*, 899 N.W.2d 531, 536 (Minn. App. 2017). When reviewing whether counsel's investigation was a deficient performance, Minnesota courts consider whether the investigation fell within trial strategy or whether counsel failed to perform reasonably. *Williams v. State*, 764 N.W.2d 21, 31 (Minn. 2009). Attorneys have "wide latitude" to select the best strategy for their clients. *Nicks*, 831 N.W.2d at 506. Counsel's decisions as to which witnesses to interview and how to prepare the defense have been repeatedly treated as trial strategy. *See*, *e.g.*,

5

*Andersen v. State*, 830 N.W.2d 1, 13 (Minn. 2013); *State v. Davis*, 820 N.W.2d 525, 540 n.10 (Minn. 2012); *see also State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) ("Which witnesses to call at trial . . . lie[s] within the proper discretion of the trial counsel. Such trial tactics should not be reviewed by an appellate court, which, unlike the counsel, has the benefit of hindsight.").

At the plea hearing, appellant answered "Yes" when the district court asked him if: (1) he recognized the guilty-plea petition; (2) B.R. had gone over it with him, line by line; (3) B.R. had been appellant's lawyer throughout the proceedings; (4) appellant believed B.R. had all the information he needed in order to advise appellant; (5) appellant had enough time to talk with B.R.; and (6) appellant was happy with B.R.'s representation.

At the plea hearing, B.R. also questioned appellant, who answered "Yes" when asked if: (1) the two of them had met the day before trial in B.R.'s office, (2) they had had the morning to decide whether to go to trial or accept the prosecutor's offer, (3) appellant had had a chance to talk to his sister on the telephone, (4) B.R. and appellant had talked about some witnesses and had contacted some witnesses, (5) appellant had met with B.R.'s staff and gone through the evidence, (6) appellant felt "like [he]'d had a full and thorough opportunity to review all the facts of [his] case," and (7) appellant understood that B.R. was "not pressuring [him] in any way to make [his] decision to plead" and the decision to plead was "[appellant's] and [his] alone."

B.R. testified at the evidentiary hearing that, although appellant decided to plead guilty on the day that trial was scheduled, B.R. was ready to go to trial; he had reviewed the case with appellant; and he believed the case "came down to a credibility

6

determination" between appellant and C.T. The district court wrote in its order that, "[it did] not credit [appellant's] testimony [at the evidentiary hearing] regarding [B.R.'s] lack of preparation. [B.R.] credibly testified that he did investigate the case and came prepared for trial. At his guilty-plea hearing, [appellant] agreed with that assertion."

Appellant argues that B.R. failed to contact witnesses, but B.R. testified on cross-examination that "I don't contact witnesses because that makes me a witness myself so my paralegal would have been the one to contact" the witnesses. He testified that his paralegal contacted three witnesses. Appellant also argues that B.R. has been repeatedly accused of ineffective assistance of counsel, but admits that none of those who accused B.R. has been able to establish ineffective assistance. *See, e.g.*, *Eason v. State*, 950 N.W.2d 258, 270 (Minn. 2020); *State v. Reinbold*, No. A23-0453, 2025 WL 121559 (Minn. App. Apr. 28, 2025); *State v. Jenson*, No. A23-1790, 2024 WL 3493886 (Minn. App. July 22, 2024); *Wright v. State*, No. A06-0755, 2008 WL 2446318 (Minn. App. May 20, 2008), *rev. denied* (Minn. Aug. 5, 2008).[2]

Finally, appellant argues that, but for B.R.'s deficient performance, appellant would not have pleaded guilty, so he was prejudiced by the deficient performance and thus meets the second prong of the ineffective-assistance claim, *i.e.*, but for B.R.'s errors, appellant would not have pleaded guilty and would have insisted on going to trial. *See Ellis-Strong*, 899 N.W.2d at 536. But the second prong need not be considered here: if either of the

---

[2] Appellant also cites B.R.'s comment to a panel of this court, B.R.'s social-media posts, and B.R.'s unavailability for court appearances because of travel. None of these has any relationship to B.R.'s representation of appellant in this case.

prongs of an ineffective-assistance claim is dispositive, the other need not be considered. *Johnson v. State*, 673 N.W.2d 144, 148 (Minn. 2004). Appellant has not demonstrated that B.R.'s performance was deficient; thus, his claim that his guilty plea was invalid because of ineffective assistance of counsel fails.

### II. Appellant's Pro Se Brief

Appellant in his pro se brief argues that his *Alford* plea must be withdrawn to correct a manifest injustice.

> A manifest injustice exists if a guilty plea is not valid. To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent. A defendant bears the burden of showing his plea was invalid. Assessing the validity of a plea presents a question of law that we review de novo.

*State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citations omitted).

First, appellant claims the plea was inaccurate because appellant did not admit that he either had sexual contact with C.T. or that he caused her personal injury, which are two elements of an offense under Minn. Stat. § 609.342, subd. 1a(c) (2014). But in an *Alford* plea, a court may accept a defendant's guilty plea even though the defendant maintains his innocence. *State v. Theis*, 742 N.W.2d 643, 645 n.1 (Minn. 2007) (citing *North Carolina v. Alford*, 400 U.S. 25, 38 (1970)). When the district court asked him if he wanted to say that there was a substantial likelihood a jury could find him guilty based on the evidence, appellant answered, "Yes."

Moreover, appellant answered in the affirmative when asked if C.T. would testify that she was his biological daughter, was under the age of 16 at the time of the incident, went to a party where he was and went upstairs to go to sleep, experienced his hand

8

touching her vagina, and felt pain for several days afterwards. Moreover, C.T.'s testimony would not have needed to be corroborated under Minn. Stat. § 609.347, subd. 1 ("In a prosecution under [Minn. Stat. §] 609.342 . . . the testimony of a victim need not be corroborated."). Thus, appellant's guilty plea was accurate.

Appellant also claims his plea was neither intelligent nor voluntary. The transcript shows that appellant said he understood that he was giving up rights associated with a trial. When appellant said he did not understand that there was no agreement on sentencing, the district court explained to him that: (1) the state would ask that appellant go to prison for some time between 90 and 108 months, (2) B.R. would argue that appellant should either be on probation or be in prison for less time, and (3) the district court would decide on the sentence. Appellant then said he understood. He also said he understood that B.R. would ask for him to be put on probation and that his disagreement with a prison sentence would not be a reason to withdraw his guilty plea and affirmed that no one made any threats or promises to get him to plead guilty. In response to questions from the state's attorney, appellant said he understood that his conviction would mean that he would need to register as a predatory offender and that there was a ten-year conditional-release period after his sentence was executed. Thus, the plea transcript refutes appellant's claim that his plea was not accurate, intelligent, or voluntary.

**Affirmed.**